# MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

COUNSELORS AT LAW

990 STEWART AVENUE, SUITE 300
P.O. BOX 9194
GARDEN CITY, NEW YORK 11530-9194
516-741-6565
FACSIMILE: 516-741-6706

ONE COMMERCE PLAZA
SUITE 1705
ALBANY, NEW YORK 12260
518-465-5551
FACSIMILE: 518-465-2033

1350 BROADWAY, SUITE 501
P.O. BOX 822
NEW YORK, NEW YORK 10018-0026
212-239-4999
FACSIMILE: 212-239-1311
E-MAIL: meyersuozzi@msek.com
WEBSITE: http://www.msek.com

1300 CONNECTICUT AVENUE, N.W.
SUITE 600
WASHINGTON, DC 20036
202-955-6340
FACSIMILE: 202-223-0358

425 BROADHOLLOW ROAD, SUITE 405
P.O. BOX 9064
MELVILLE, NEW YORK 11747-9064
631-249-6565
FACSIMILE: 631-777-6906

HANAN B. KOLKO
DIRECT DIAL: 212-763-7017
E-MAIL: HKOLKO@MSEK.COM

May 9, 2008

**_Via E-Filing,  Hand Delivery and First Class Mail_**
Honorable Denise Cote
United State District Judge
Untied States Courthouse
500 Pearl Street, Room 1040
New York, NY 10007

> Re:  Trustees of the 1199/SEIU Greater New York Benefit Fund v. Kingsbridge
> Heights Rehabilitation Care Center 07 CV 9744 (DLC) (THK)

Dear Judge Cote:

We represent plaintiffs, the Trustees of the 1199/SEIU Greater New York Benefit Fund, Pension Fund, Education Fund, Child Care Fund, Worker Participation Fund, and Job Security Fund (collectively, the "Funds").  We write pursuant to ¶2 of Your Honor's April 9, 2008 Pre-Trial Order, and explain here why this Court has subject matter jurisdiction over this case.

## FACTUAL BACKGROUND

Plaintiffs, Trustees of the Funds, bring this action pursuant to the Employee Retirement Income Security Act, as amended 29 U.S.C. §1001 et seq., ("ERISA"), and §301 of the Labor Management Relations Act, 29 U.S.C. §185 ("§301").   Plaintiffs here seek to collect approximately $2.9 million dollars in unpaid fringe benefit fund contributions due from defendant Kingsbridge Heights Rehabilitation Care Center ("KB" or "Kingsbridge"), along with interest, attorneys fees, and liquidated damages pursuant to ERISA 29 U.S.C. §1132(g).  The Funds are jointly trusteed fringe benefit funds.  Half of the Trustees are appointed by 1199/SEIU,

Honorable Denise Cote
May 9, 2008
Page 2

United Health Care Workers East ("1199"), a labor union, and half of the Trustees are appointed by employers which have collective bargaining agreements with 1199. The Funds are funded solely by employer contributions and provide covered employees with medical benefits, pensions, child care benefits, educational benefits, and other ancillary fringe benefits.

1199 is a labor union, which, at all relevant times, has represented the employees of defendant KB. KB is a 400 bed nursing home in the Bronx. 1199 and KB have been parties to a series of collective bargaining agreements ("CBAs"), the most recent of which expired on April 30, 2005.

1199 CBAs – including its CBA with Kingsbridge – require employers to make contributions to the Funds. These contributions are expressed as a percentage of gross payroll. For example, pension contributions due to the Greater New York Pension Fund are set at 5.84% of gross payroll. Fund contributions are due on the 10th of the following month. For instance, contributions based on April, 2008 earnings are due on May 10, 2008.

For many years, Kingsbridge has been chronically delinquent in making the payments that it owes to the Funds. As part of its efforts to remedy these delinquencies, in December, 2005, 1199 filed an unfair labor practice charge with the National Labor Relations Board (the "NLRB") alleging that Kingsbridge violated the National Labor Relations Act (the "NLRA") by failing to make contributions to the Funds for the period subsequent to April 30, 2005. The NLRB issued a complaint charging Kingsbridge with violating the NLRA by failing to make the post-April 30, 2005 fringe benefit fund contributions and by failing to do so in a timely manner. That case went to trial, and, on June 8, 2006, during that trial, Kingsbridge and 1199 entered into a settlement agreement. That agreement, referred to as the June 8 Agreement, is attached as Exhibit A.

Honorable Denise Cote
May 9, 2008
Page 3

In ¶3 of the June 8 Agreement, Kingsbridge agreed to "make timely monthly contributions to the . . . [Funds], as they become due." Despite making this agreement, Kingsbridge failed to live up to its obligations in ¶3 of the June 8 Agreement to make Fund contributions in a timely manner. It last made Fund contributions on August 9, 2007, when it paid contributions which were due on June 10, 2007. Since then, Kingsbridge has made no Fund contributions. Because Kingsbridge failed to adhere to the June 8 agreement, plaintiffs bring this action to enforce the June 8 Agreement and to require KB to make the contributions which it agreed to pay in the June 8 Agreement.

## ARGUMENT

Defendant argues that this Court lacks federal subject matter jurisdiction over plaintiffs' claim. "Subject matter jurisdiction, however, only requires a plaintiff to have a 'colorable claim' arising under the constitution or laws of the United States." Schefer v. Town of Victor, 457 F.3d 188, 199, n.14 (2d Cir. 2006), quoting Da Silva v. Kinshow International Corp., 229 F.3d 358, 363 (2d Cir. 2000). We explain here why Plaintiffs' claim provides this Court with subject matter jurisdiction.

Plaintiffs' claims in this action are based solely on the June 8 Agreement. Plaintiffs ask this Court to find that Kingsbridge has violated the June 8 Agreement, and plaintiffs ask this Court to remedy KB's violation of the June 8 Agreement. Plaintiffs do not here claim that defendant violated the National Labor Relations Act ("NLRA"), do not ask the Court to adjudicate issues under the NLRA, and do not ask the Court to remedy NLRA violations. See, Complaint ¶¶ 21, 22.

Honorable Denise Cote
May 9, 2008
Page 4

## 1. Advanced Lightweight Concrete Does Not Apply

In arguing that this Court lacks subject matter jurisdiction, defendant relies on the Supreme Court's decision in Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete, 484 U.S. 539 (1988) ("Advanced Lightweight Concrete"). In Advanced Lightweight Concrete, the employer was a party to collective bargaining agreements which expired on June 15, 1983. Those agreements required it to make certain fringe benefit fund contributions. The employer ceased making those fringe benefit fund contributions after June 15, 1983. The plaintiff there, a fringe benefit fund, sued in district court, and alleged that the employer's failure to make contributions for the period after June 15, 1983 violated §8(a)(5) of the NLRA, 29 U.S.C. §158(a)(5), and asserted that ERISA provided the Court with subject matter jurisdiction.

Under the NLRA, after the expiration of a collective bargaining agreement, an employer must keep in effect the terms and conditions of the expired collective bargaining agreement until a new collective bargaining agreement is reached or until the parties have reached a lawful impasse in the negotiations. Absent lawful impasse, an employer violates §§8(a)(1), (5) and 8(d) of the NLRA if it unilaterally changes the terms and conditions of employment. NLRB v. Katz, 369 U.S. 736, 743 (1962). In Advanced Lightweight Concrete, plaintiffs argued that the employer's failure to continue making fringe benefit contributions after expiration of the contract was an unlawful post-expiration unilateral change in terms and conditions of employment and thus a violation of NLRA § 8(a)(5). The Supreme Court ruled that the district court did not have jurisdiction to hear that case because ERISA "does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the NLRA." 484 U.S. at 549.

Honorable Denise Cote
May 9, 2008
Page 5

As a review of the complaint here demonstrates, plaintiffs do not ask this Court to determine whether KB's "unilateral decision to refuse to make post-contract contributions constitutes a violation of the NLRA." Rather, plaintiffs ask this Court to find that KB violated the June 8 Agreement and to order KB to comply with that agreement. Because <u>Advanced Lightweight Concrete</u> divests courts of jurisdictions to hear claims that an employer violated the NLRA by failing to make post-expiration contributions, it does not affect this Court's jurisdiction to hear this case, which is based on a contract – the June 8 Agreement – and not on the NLRA.

In <u>Brown v. Volante Corp.</u>, 194 F.3d 351 (2d Cir. 1999), the Court of Appeals for the Second Circuit explained and applied <u>Advanced Lightweight Concrete</u>. There, the union and employer signed a contact which expired in June, 1990 and the employer did not sign two subsequent contracts governing the period July 1, 1990 through June 30, 1996. Plaintiffs, fringe benefit fund trustees, sued under ERISA for contributions due for the period July 1, 1990 through June 30, 1996. Defendant, relying on <u>Advanced Lightweight Concrete</u>, argued that the district court did not have subject matter jurisdiction to hear plaintiffs' claims for fringe benefit contributions due subsequent to the June 30, 1990 expiration of the signed collective bargaining agreement. The Court of Appeals rejected this argument. It explained:

> In <u>Advanced Lightweight Concrete</u>, the Supreme Court held that ERISA §502(g)(2) and 515 do not confer subject matter jurisdiction over claims 'to determine whether an employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the [NLRA].' . . . According to the Court, §502(g)(2) and 515 confer jurisdiction only over claims for 'promised contributions,' not over unfair labor practice claims that an employer has refused to bargain in good faith by failing to make post-contract benefit plan contributions before negotiations for a new contact reached an impasse. . . . The

Honorable Denise Cote
May 9, 2008
Page 6

> decision, therefore, stands only for the unremarkable
> proposition that the NLRB generally has exclusive
> jurisdiction over unfair labor practice claims.    . . . .
> Although it is true that the Trustees' claims arose from
> appellant's alleged failure to contribute to the Fund after the
> signed CBA expired, this does not render them per se unfair
> labor practice claims over which the district court lacks
> jurisdiction under Advanced Lightweight.  The Trustees are
> not arguing that appellant is unlawfully refusing to bargain
> by making unilateral changes in working conditions before
> reaching an impasse over a new CBA.

Volante Corp., 194 F.3d at 353-54.

Other courts have ruled that Advanced Lightweight Concrete only divests district courts

of subject matter jurisdiction where the claim for post-contract expiration contributions is based

on §8(a)(5) of the NLRA.  Thus, in Automobile Mechanics Local 701 v. Vanguard Car Rental,

502 F.3d 740 (7th Cir. 2007), the Court of Appeals for the Seventh Circuit rejected the

employer's claim that it lacked subject matter jurisdiction over plaintiff's ERISA lawsuit for

post-expiration fringe benefit contributions because "the Funds here do not rely on any alleged

statutory duty Vanguard might have to continue contributing during the post-contract status

quo."  502 F.3d at 745.

Two decisions of this Court illustrate this point.  In LoPresti v. HLH Seps, Inc., No. 96

Civ. 1834, 1996 U.S. Dist. LEXIS 14184 (S.D.N.Y. September 27, 1996), the collective

bargaining agreement expired, and subsequent to expiration, the employer ceased making fringe

benefit contributions.  Like plaintiffs here, the LoPresti plaintiff brought suit against the

employer under ERISA seeking to recover the unpaid fringe benefit contributions.  Like the

employer here, the employer there argued that under Advanced Lightweight Concrete, the

district court lacked jurisdiction.  Judge Patterson rejected this argument, because plaintiff "does

not base this action on the [employer's] statutory obligation to maintain status quo under §8(a)(5)

Honorable Denise Cote
May 9, 2008
Page 7

of the NLRA." No. 95 Civ. 10956, 1996 U.S. Dist. LEXIS 14184 at *5.  In Smith v. Candler,

No. 95 Civ. 10956, 1996 U.S. Dist. LEXIS 10935 (S.D.N.Y. August 2, 1996), Judge Mukasey

explained that under Advanced Lightweight Concrete:

> Federal court jurisdiction exists under ERISA §502 only
> when the employer's duty to make payments to a pension
> fund derives from a contract . . . . ERISA does not confer
> jurisdiction on the district court to determine whether an
> employer's refusal to make contributions to a protected
> plan violates the duty to bargain in good faith; those
> issues are within the exclusive competence of the NLRB.
> Thus, the existence of jurisdiction here depends on the
> source of [the employer's] alleged obligation: if that
> source is the CBA or another contract, jurisdiction exists;
> if that source is the NLRA alone, jurisdiction does not
> exist.

1996 U.S. Dist. LEXIS 10935, at *5.  Other district courts have issued similar rulings.  See, e.g.

Teamsters Local No. 120 v. Marathon Petroleum, No. 06 Civ. 3431, 2006 U.S. Dist. LEXIS

61933, at *11 (D. Minn. August 29, 2006); Wisconsin Sheet Metal Workers v. American Metal

Craft Industries, No. 04-C-1171, 2005 U.S. Dist. LEXIS 44155 at *8-9 (E.D. Wisc. April 29,

2005); Painters Trust v. Sandvig – Ostergard, 737 F. Supp. 1131, 1134-1137 (W.D. Wash. 1990);

Central States v. McClain Trucking, No. 89 C 0206, 1990 U.S. Dist. LEXIS 12582 at *8 (N.D.

Ill. September 25, 1990).

   Where claims for post-contract expiration fringe benefit contributions are based on non-

NLRA grounds, courts reject the Advanced Lightweight Concrete defense and find that they

have jurisdictions to adjudicate these claims.  In Volante, the Second Circuit ruled that a district

court had jurisdiction to hear a claim for fringe benefits due after the expiration of the signed

CBA because "the Trustees claim that [the employer] promised to contribute to the Fund by

adopting the two CBAs that it never signed.  Appellee's claims are thus clearly for 'contributions

Honorable Denise Cote
May 9, 2008
Page 8

[owing] in accordance with the terms and conditions of . . . [a collective bargaining] agreement,'

29 U.S. C. §1145, and 'violations of contracts between an employer and a labor organization,' 29

U.S. C. §29 U.S.C. §185(a), over which the district court has jurisdiction." Volante, 194 F.3d at

354. Given that an unsigned agreement confers ERISA and §301 jurisdiction -- as the Court held

in Volante -- then surely the signed June 8 Agreement confers ERISA and §301 jurisdiction here.

In LoPresti, this Court ruled that it had jurisdiction to adjudicate claims for post-CBA

expiration contributions where plaintiff's claim was based on the employer's post-CBA

expiration contributions and the claim that the employer continued to be obligated to make

contributions pursuant to the terms of the pension plan. LoPresti, 1996 U.S. Dist. LEXIS 14184

at *5-7. In Painters Trust, the district court found that it had jurisdiction over the claim for post-

CBA expiration contributions because that claim was based on contracts referred to as

"registration and counterpart agreements," and not on any claimed NLRA violation. Painters

Trust, 737 F. Supp. at 1136-1137. In Berry v. Garza, 919 F.2d 87 (8th Cir. 1990), the Court

found that it had jurisdiction to adjudicate a claim for post-expiration contributions based on the

plaintiffs' claim that the employer entered into a post-CBA expiration agreement in which it

agreed to adhere to the terms of the expired contract until a new agreement was reached. 919

F.2d at 89, n.1.

Here, Kingsbridge voluntarily entered into a new agreement – the June 8 Agreement – in

which it specifically agreed to make all Fund contributions. Where an employer's post-

expiration obligation to contribute arises from some independent contractual duty – as opposed

to a claimed violation of the NLRA – Advanced Lightweight Concrete does not deprive courts of

jurisdiction to hear those disputes. Here, because plaintiffs claim that defendants are obligated to

make payments under the June 8 Agreement – and not the NLRA – this Court has jurisdiction

under ERISA and §301.

### 2. The Pending NLRB Proceeding Does Not Divest This Court of Jurisdiction

Defendant argues that because 1199 is seeking to enforce the June 8 Agreement in a

proceeding with the NLRB, this Court lacks jurisdiction to hear this case. Despite making this

argument, defendant cites no supporting case law. In any event, the fact that certain conduct

may violate both the NLRA and ERISA does not deprive federal courts of jurisdiction to hear

cases under ERISA. In Scarfi v. Bright Star Industries, 779 F. Supp. 687 (E.D.N.Y. 1992),

plaintiffs sued under ERISA seeking fringe benefit contributions. The employer moved to

dismiss "on the ground that the [NLRA] confers exclusive jurisdiction for matters concerning

unfair labor practices with NLRB; hence, the defendant argues, this court is without jurisdiction

over this action." 779 F. Supp. at 688. Judge Glasser rejected this argument. He explained:

> [T]he defendant characterizes this suit as a dispute over
> unfair labor practices; thus, the defendant maintains, the
> NLRA – and not ERISA or the LMRA – governs this
> matter. For this reason, the defendant argues that the
> only adjudicative body with jurisdiction over this action is
> the NLRB. The only difficulty with the argument of the
> defendant is that the relevant statutes, the settled case law,
> and sound reasoning compel a different conclusion. First,
> as to the relevant statutes, [employer] does not argue –
> nor could it – that the grant of exclusive jurisdiction in the
> NLRB expressly overrides the clear grant of jurisdiction
> to the federal courts under ERISA and the LMRA. That
> is, the defendant is unable to demonstrate statutory
> support for its implicit proposition that the exclusive grant
> of jurisdiction under the NLRA controls an action under
> ERISA or under the LMRA if that action also implicates
> questions of unfair labor practices. Rather, there is no
> explicit statutory coordination of these provisions. Such
> coordination is provided, however, by the settled case
> law. In Smith v. Evening News Association, 371 U.S.
> 195, 197, 9 L. Ed. 2d 246, 83 S. Ct. 267 (1962), the

Honorable Denise Cote
May 9, 2008
Page 10

> Supreme Court held that the "authority of the Board to
> deal with an unfair labor practice which also violates a
> collective bargaining contract . . . does not destroy the
> jurisdiction of the courts in suits under §301 [of the
> LMRA]."    More    recently,    the    Second    Circuit
> acknowledged "that federal courts have concurrent
> jurisdiction with the NLRB to hear cases involving both
> alleged NLRA violations and claims of breach of
> collective bargaining agreements . . . ." International
> Organization of Masters, Mates & Pilots v. Trinidad
> Corp., 803 F.2d 69, 73 (2d Cir. 1986) (emphasis added).
> See also Central Valley Typographical Union, No. 46 v.
> McClatchy Newspapers, 762 F.2d 741, 746 (9th Cir. 1985)
> (federal courts and NLRB have "concurrent jurisdiction"
> over cases that "legitimately" involve both allegations of
> unfair labor practices and allegations of breach of
> collective    bargaining    agreement).    Under    these
> authorities, it is clear that this Court has jurisdiction over
> this matter – even if this action does in fact implicate
> unfair labor practices.

779 F. Supp. at 688-689.

In Teamsters Local No. 120, the defendants argued that plaintiff's claims should be

dismissed because "this matter is preempted by federal labor law because their alleged activities

are subject §7 or §8 of the [NLRA]. They point out that plaintiffs have filed an unfair labor

practice charge with the NLRB   . . . . Defendants contend that the administrative charge

preempts this Court's jurisdiction." 2006 U.S. Dist. LEXIS 61933 at *7. After discussing the

relevant case law, the Court rejected the employer's argument, explaining that it was able to

decide plaintiff's "ERISA claims without any regard to the NLRA." 2006 U.S. Dist. LEXIS

61933 at *9. Similarly, here, this Court can adjudicate plaintiff's claim based on the June 8

Agreement without regard to the NLRA. Thus, the pending NLRB proceeding does not affect

this Court's jurisdiction to adjudicate this action.

Honorable Denise Cote
May 9, 2008
Page 11

3. The June 8 Agreement Provides This Court With §301 and ERISA Jurisdiction

Defendant also argues that this Court lacks jurisdiction because the June 8 Agreement is not a collective bargaining agreement. As set out in paragraphs 21 and 22 of the Complaint, plaintiffs assert a claim under which §301, which gives federal courts jurisdiction to adjudicate "suits for a violation of contracts between an employer and a labor organization." 29 U.S.C. §185(a). In interpreting the §301 grant of jurisdiction, the Court of Appeals for the Second Circuit explains that federal courts have jurisdiction to enforce an agreement that "although not a traditional collective bargaining contract . . . [governed] certain terms and conditions of the employer's relations with its employees." District 2 Marine Engineers v. Grand Bassa Inc., 663 F.2d 392, 398 (2d Cir. 1981). The June 8 Agreement is an agreement between a union and an employer, and it governs terms and conditions of employment -- the employer's obligation to make contributions to the Funds. Thus, this Court has §301 jurisdiction to enforce the June 8 Agreement because it is a contract between an employer and a labor organization.

Defendant's argument that because the June 8 Agreement is not a collective bargaining agreement this Court does not have ERISA jurisdiction must also be rejected because courts have found that they have ERISA jurisdiction to enforce fringe benefit contribution obligations based on agreements limited to fringe benefit issues. Thus, in Central States v. Behnke, Inc., 883 F.2d 454, 460-462 (6th Cir. 1989), the court found that it had jurisdiction to enforce an "interim agreement" that required the employer to make fringe benefit contributions during a period between the expiration of one collective bargaining agreement and the start of another collective bargaining agreement. This interim agreement – like the June 8 Agreement here – governed only the employer's obligations to make fringe benefit contributions. Other courts have followed Behnke and found that ERISA provides jurisdiction to enforce agreements that address

Honorable Denise Cote
May 9, 2008
Page 12

only an employer's obligation to make fringe benefit contributions.  See, e.g., <u>Central States v.</u>
<u>Kabbes Trucking Co.</u>, No. 02 C 1809, 2004 U.S. Dist. LEXIS 23558 (N.D. Ill. November 18,
2004) at *39-41; <u>Operative Plasterers v. J.P. Phillips, Inc.</u>, No. 06-32322, U.S. Dist. LEXIS
60438 (C.D. Ill. August 17, 2007) at *4-6; <u>Pattern Makers Pension Trust Fund v. Badger Pattern</u>
<u>Works, Inc.</u>, 615 F. Supp. 792, 800-801 (N.D. Ill. 1985).

## CONCLUSION

Both §301 and ERISA give federal courts jurisdiction to enforce contractual agreements
to pay fringe benefits.    In the June 8 Agreement, Kingsbridge agreed to make timely
contributions to the Funds.    While the Supreme Court's ruling in <u>Advanced Lightweight</u>
<u>Concrete</u> made it clear that federal courts do not have jurisdiction to decide whether failure to
make fringe benefit fund contributions constitutes an NLRA violation, that decision did not
disturb the well established law that grants federal court jurisdiction to enforce contractual
obligations to make fringe fund contributions. Here, because plaintiffs seek only to enforce
defendant's contractual obligation under the June 8 Agreement to make fringe benefit fund
contributions and do not ask this Court to adjudicate any NLRA issues, this Court has
jurisdiction to rule on plaintiffs' claims and order defendant to comply with the June 8
Agreement.

Respectfully submitted,

Hanan B. Kolko

HBK:ptp

Cc:  Mitra Behroozi, Esq.
     Mike Rifkin, Executive Vice President
     Paul Sod, Esq. (*Via E-mail*)

94837