UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
TRUSTEES OF THE 1199/SEIU GREATER:
NEW YORK BENEFIT FUND, TRUSTEES OF:
THE 1199/SEIU GREATER NEW YORK:
PENSION FUND, TRUSTEES OF THE:
1199/SEIU GREATER NEW YORK:
EDUCATION FUND, TRUSTEES OF THE:
1199/SEIU GREATER NEW YORK CHILD:
CARE FUND, TRUSTEES OF THE 1199/SEIU:
GREATER NEW YORK JOB SECURITY:
FUND, and THE TRUSTEES OF THE:
1199/SEIU GREATER NEW YORK WORKER:
PARTICIPATION FUND,                    :

               Plaintiffs,

        v.

KINGSBRIDGE HEIGHTS REHABILITATION:
CARE CENTER,                           :

               Defendant.
- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- - X

Civil Action No.
07 CV 9744 (DLC)

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Meyer, Suozzi, English & Klein, P.C.*
*1350 Broadway, Suite 501*
*New York, New York 10018*
*212-239-4999*
*Attorneys For Plaintiffs*

On The Brief: Hanan B. Kolko

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

FACTS ............................................................................................................. 3

    1. The Parties ........................................................................................... 3

    2. June 8, 2006 Agreement ..................................................................... 4

    3. Kingsbridge Breaches The June 8 Agreement ................................... 4

    4. Kingsbridge Does Not To Permit The Funds To Conduct An Audit .... 5

ARGUMENT ..................................................................................................... 6

    1. The Summary Judgment Standard ...................................................... 6

    2. This Court Has Jurisdiction Under ERISA To Enforce
       The June 8 Agreement ......................................................................... 6

    3. This Court Has §301 Jurisdiction To Enforce The June 8 Agreement ............. 9

    4. Remedy ................................................................................................ 10

        A. Unpaid Contributions .................................................................. 10

        B. Interest, Attorneys Fees and Costs, and Liquidated Damages ................. 11

        C. The Audit .................................................................................... 11

CONCLUSION .................................................................................................. 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
TRUSTEES OF THE 1199/SEIU GREATER:
NEW YORK BENEFIT FUND, TRUSTEES OF:
THE 1199/SEIU GREATER NEW YORK:
PENSION FUND, TRUSTEES OF THE:
1199/SEIU GREATER NEW YORK:
EDUCATION FUND, TRUSTEES OF THE:
1199/SEIU GREATER NEW YORK CHILD:
CARE FUND, TRUSTEES OF THE 1199/SEIU:
GREATER NEW YORK JOB SECURITY:       Civil Action No.
FUND, and THE TRUSTEES OF THE:       07 CV 9744 (DLC)
1199/SEIU GREATER NEW YORK WORKER:
PARTICIPATION FUND,                  :

                    Plaintiffs,

          v.

KINGSBRIDGE HEIGHTS REHABILITATION:
CARE CENTER,                         :

                    Defendant.
- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- - X


## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs[1] sue here to enforce a June 8, 2006 agreement (the "June 8

Agreement") in which defendant Kingsbridge Heights Rehabilitation and Care Center

("Kingsbridge") agreed to "make timely monthly contributions to the Benefit, Pension,

Education, Job Security, Worker Participation and Child Care Funds, as they become

due." Kolko Affidavit, ¶2, Exhibit 1.[2]  Plaintiffs were forced to bring this action because

at the time the Complaint was filed, despite agreeing to make timely Funds payments,

---

[1] Plaintiffs are the Trustees of the 1199 Greater New York Benefit Fund, Pension Fund, Education Fund, Child Care Fund, Job Security Fund and Worker Participation Fund (collectively the "Funds")

[2] We cite to the affidavits of Hanan B. Kolko, Timothy Wells, and Stanley Moskowitz as follows:  Kolko Affidavit, ¶___; Wells Affidavit, ¶___; Moskowitz Affidavit, ¶___.

Kingsbridge made no Funds payments for any month after May, 2007, no Funds payments for December, 2006, and paid only Benefit Fund contributions for November, 2006, making no other Funds contributions for that month.  Sieger Dep., 31-39[3].  In addition, each of the Funds payments which Kingsbridge did make pursuant to the June 8 Agreement were made late.  Kolko Affidavit, Exhibit 2, p. 8-10.

Plaintiffs bring this action under the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"), and §301 of the Labor Management Relations Act of 1947, ("Section 301") as amended, 29 U.S.C. §185(a) ("LMRA").  In addition to the unpaid Funds contributions, pursuant to ERISA, 29 U.S.C. §1132(g), plaintiffs seek interest on the unpaid Funds contributions, interest on the late Funds contributions, reasonable attorneys fees and costs, liquidated damages in an amount equal to the greater of interest on the unpaid damages or 20% of the unpaid contributions, and an order compelling Kingsbridge to submit to a Funds audit.

---

[3] We cite to the transcript of the August 6, 2008 deposition of Ms. Helen Sieger as:  Sieger Dep. _____.

FACTS[4]

1. The Parties

Plaintiffs are trustees and fiduciaries of Funds, which are established and maintained pursuant to §302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5). The Funds are employee benefit plans within the meaning of ERISA, 29 U.S.C. §§1002(2) and (3). Wells Affidavit, ¶6-8. The Funds provide medical benefits, retirement benefits, child care benefits, education benefits and other benefits to eligible participants and their beneficiaries. As a general matter, employees whose employers are subject to collective bargaining agreements which require contributions to the Funds are eligible for the benefits which the Funds provide. In addition, these employees' spouses and minor children are eligible for certain benefits. Wells Affidavit, ¶10.

Defendant Kingsbridge is a nursing home located in the Bronx. For many years, it has had a collective bargaining relationship with 1199 SEIU United Healthcare Workers East ("1199"). Many of Kingsbridge's employees were and are represented by 1199. Sieger Deposition, 11-12; Complaint, ¶11, Answer, ¶11. Up through April 30, 2005, Kingsbridge and 1199 were parties to a collective bargaining agreement (the "CBA"). Answer, ¶11.

---

[4]Almost all of the factual findings relevant to the adjudication of this case were made by NLRB Administrative Law Judge Fish in his July 30, 2008 decision, Kingsbridge Heights Rehabilitation Care Center, Case No. 29-CA-27502. Kolko Affidavit, ¶3, Exhibit 2. While Judge Fish's decision is not preclusive, in Local 812 GIPA v. Canada Dry Bottling, No. 98 Civ. 3791, 2000 U.S. Dist. LEXIS 18712 at *7, (S.D.N.Y. December 29, 2000), the court explained: "the Court, in a variety of contexts, can defer to the judgment of government agencies under the doctrine of primary jurisdiction. . . . In the context of the NLRB, 'when the NLRB pursuant to a §8 unfair labor practice allegation thoroughly investigates allegations . . . and finds that the evidence does not support a finding of wrongdoing, a Court may then properly defer to the judgment of the NLRB.' [Citation omitted]" Here, the findings of Judge Fish are entitled to greater deference because they were made after a full hearing on the record with sworn testimony and cross examination. In this regard, we note also that in its August 14, 2008 Opinion and Order in Mattina v. Kingsbridge Heights Rehabilitation and Care Center, 08 Civ. 6550 (DLC) (August 14, 2008), this Court gave great weight to Judge Fish's factual findings. We urge this Court to give great weight to these findings in this matter as well.

For as long as 1199 and Kingsbridge were parties to a collective bargaining agreement, 1199 - represented employees at Kingsbridge were eligible to receive benefits from the Funds and in fact received benefits from the Funds. Wells Affidavit, ¶11. After the April 30, 2005 expiration of the CBA, 1199 represented Kingsbridge employees continued to remain eligible for and receive Funds benefits, except for two periods when some benefits were cut off due to Kingsbridge's contribution delinquencies. Wells Affidavit, ¶11.

## 2. June 8, 2006 Agreement

After the CBA expired, Kingsbridge failed to make timely Funds contributions. As a result, 1199 filed an unfair labor practice charge ("ULP") with the National Labor Relations Board ("NLRB") against Kingsbridge alleging that it failed to make certain Funds contributions. Kolko Affidavit, ¶2, Exhibit 2, p. 1; Sieger Dep., 16-17. A trial on that ULP charge opened before NLRB Administrative Law Judge Fish on May 30, 2006 and continued on June 8, 2006. Kolko Affidavit, ¶2, Exhibit2, p. 1. On June 8, 2006, the parties entered into a settlement agreement which addressed most of the issues in that case. Section III of that agreement required Kingsbridge to make "timely monthly contributions" to the Funds. Kolko Affidavit, ¶2, Exhibit 2; ¶1, Exhibit 1.

## 3. Kingsbridge Breaches The June 8 Agreement

Despite its June 8, 2006 promise to make "timely monthly" Funds contributions, Kingsbridge never did. Funds payments, which are calculated as a percentage of wages earned, are due on the 10th of the month following the month in which the particular wages are earned. Wells Affidavit, ¶9. Thus, for instance, contributions for wages earned in June, 2007, are due on July 10, 2007. Kolko Affidavit, ¶1, Exhibit 2, p.

4

6-7. The first payment under the June 8 Agreement was due on July 10, 2006, for earnings during June, 2006. Kingsbridge made those payments with checks dated October 9, 2006, which were received by the Funds on October 27, 2006. Kolko Affidavit, ¶2, Exhibit 2, p. 8. The payments due for July, August, September, and October, 2006 were all also late. Kolko Affidavit, ¶2, Exhibit 2, at p. 8.

With the exception of the Benefit Fund, Kingsbridge made no Funds payments for November, 2006 until August 13, 2008. Kingsbridge made no Funds payments for December, 2006, until August 13, 2008. Sieger Deposition page 66-67; Kolko Affidavit, ¶6, 7; Kolko Affidavit, ¶2, Exhibit 2, at 9. Kingsbridge made late payments for the months of January, 2007 though and including May, 2007. Kolko Affidavit, ¶2, Exhibit 2, at 9-10.[5]

Kingsbridge has made no Funds contributions for July, 2007 through and including February, 2008. Sieger Dep., 33-39. It paid contributions due for June, 2007 on or about July 14, 2008. Sieger Dep., 32-33. As a result of Kingsbridge's failure to make Funds contributions, in early November, 2007, the Funds terminated medical benefits for the Kingsbridge employees. Kolko Affidavit, ¶2, Exhibit 2, p. 11.

4. <u>Kingsbridge Does Not To Permit The Funds To Conduct An Audit</u>

By letter dated January 3, 2008, Funds Controller Anthony Petrella advised Kingsbridge that Funds auditor Stanley Moskowitz would be conducting a routine payroll audit of Kingsbridge on February 7, 2008, and that the audit would cover the period January 1, 2004 through the date of the audit. It is undisputed that this audit never took

---

[5] As stated in Judge Fish's decision, Kingsbridge argued "without a shred of evidence that the Union and the Funds engaged in a conspiracy to establish Respondent breached the settlement, by purposely failing to date stamp the checks received by Respondent until much later than its receipt. I find this assertion preposterous, and without any evidentiary basis." Kolko Affidavit, ¶1, Exhibit 2, p. 10.

5

place. Ms. Sieger testified in her deposition that although the January 3 Petrella letter was properly addressed, she was unaware of it until her prior counsel, Mr. Collazo, told her of the letter some time after June 24, 2008. Sieger Dep., 63-64. Ms. Sieger explained that in early January, 2008, she was ignoring her mail because she was preparing for the strike, thus did not see this letter, and never responded to it. Sieger Dep., 65. The Funds believe that during January, 2008, Ms. Sieger had a telephone conversation with Mr. Moskowitz in which she told Mr. Moskowitz that, because of her need to prepare for their upcoming strike, he could not conduct the audit. Moskowitz Affidavit, ¶4. Regardless, it is undisputed that the audit did not take place.

ARGUMENT

1. The Summary Judgment Standard

A party moving for summary judgment bears the initial burden of stating the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, which must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Only disputes over material facts that might affect the outcome of the case will preclude entry of summary judgment. Summary judgment is appropriate here because there can be no dispute over the basic material facts: Kingsbridge agreed to make timely Funds payments, and it did not do so.

2. This Court Has Jurisdiction Under ERISA To Enforce The June 8 Agreement

"Every employer who is obligated to make contributions to a multi-employer plan . . . under the terms of a collectively bargained agreement, shall, to the extent not with inconsistent with law, make such contributions in accordance with the terms and

6

conditions of such plan or such agreement." 29 U.S.C. §1145. ERISA authorizes fiduciaries such as plaintiffs here to sue an employer for §1145 violations. 29 U.S.C. §1132(a)(3). Finally, ERISA requires employers found to be delinquent in fringe benefit fund contributions to pay the principal amounts owed, plus pre-judgment interest, liquidated damages equal to the greater of the interest or 20% of the principal owed, and attorney's fees and costs. 29 U.S.C. §1132(g)(2).

The CBA expired on April 30, 2005. Where, subsequent to the expiration of a collective bargaining agreement, an employer agrees to contribute to fringe benefit funds, courts will rely on ERISA §§1132 and 1145 to enforce that agreement. "Nothing in ERISA makes the obligation to contribute dependent on the existence of a valid collective bargaining agreement . . . . §515 [29 U.S.C. §1145] interacts with a provision of the labor law in a way that strengthens its effects. No employer may agree with the Union to contribute to a pension plan without a 'written agreement' under §302(c)(5)(B) of the [LMRA] . . . . This need not be a form of collective bargaining agreement." Central States v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir. 1989).

In Brown v. Volante, Corp., 194 F.3d 351 (2d Cir. 1999), although the parties' collective bargaining agreement had expired, relying on ERISA §§1132 and 1145, the court enforced the employer's obligation to make fringe benefit contributions, because the employer "promised to contribute to the Fund by adopting the two CBAs that it never signed." 194 F.3d at 354. In Trustees v. Marangi, Inc., 289 F. Supp. 2d 455, 462 (S.D.N.Y. 2003), the court noted that courts have "specifically rejected the . . . contention that the written agreement required by §302(c)(5)(B) must be a collective

bargaining agreement. . . . The Second Circuit expressly recognizes that the written agreement with the employer can be any kind of written agreement."

In several cases, courts have found that post-contract expiration agreements were a basis for using ERISA to enforce an employer's obligation to make fringe benefit fund contributions.  In Central States v. Behnke, Inc., 883 F.2d 454 (6th Cir. 1989), after the expiration of the parties' collective bargaining agreement, the parties entered into a "fringe benefit interim agreement" and a "participation agreement."  883 F.2d at 456-7. The funds then sued under ERISA §1132 to enforce the interim agreement and participation agreement and require the employer to pay contributions due after the expiration of the parties' collective bargaining agreement.  The court found that the participation agreement and the interim agreement, were enforceable under ERISA §1145.  888 F.2d at 460, 464.

In Berry v. Garza, 919 F.2d 87 (8th Cir. 1990), funds trustees, relying on the employer's post-contract agreement to make fringe benefit contributions, sued under ERISA §§1132 and 1145 to enforce that agreement.  The court ruled that the post-expiration agreement was enforceable, explaining that "Garza voluntarily executed an addendum to that agreement in which he specifically agreed to abide by the terms of the expired contract until a new contract was completed."  919 F.2d at 89, n.1.  In Painters Trust v. Sandvig, 737 F. Supp. 1131 (W.D. Wash. 1990), after the expiration of the parties' collective bargaining agreement, they entered into "counter-part agreements," which the court enforced pursuant to §1145, requiring the employer to make the unpaid fund contributions.  737 F. Supp. at 1134-1140.  See also Central States v. Kabbes Trucking Company, No. 02 C 1809, 2004 U.S. Dist. LEXIS 23558 at

8

*39-43 (N.D. Ill. November 17, 2004); <u>Wisconsin Sheet Metal Workers v. American Metal Craft Industries</u>, No. 04-C-1171, 2005 U.S. Dist. LEXIS 44155 at *8-9 (E.D. Wisc. April 29, 2005).

Under this line of authority, it is clear that ERISA §§1132 and 1145 provide this Court with the power to enforce the June 8 Agreement.  It is equally clear that Kingsbridge breached the June 8 Agreement by making late contributions for some months and no contributions for other months.

3.  <u>This Court Has §301 Jurisdiction To Enforce The June 8 Agreement</u>

While "the overwhelming majority of suits between employers and unions under §301(a) . . . seek enforcement of collective bargaining agreements," "§301(a) is not limited to traditional collective bargaining agreements."   <u>District 2 v. Grand Bassa Tankers, Inc.</u>, 663 F.2d 392, 397 (2d Cir. 1981).  In <u>Grand Bassa</u>, the court explained that an agreement, "although not a traditional collective bargaining contract" was an agreement enforceable under §301 because it was a "labor contract governing certain terms and conditions of the employer's relation with its employees."  663 F. 2d at 398. Relying on <u>Grand Bassa</u>, the Second Circuit subsequently held that an agreement which was not a traditional collective bargaining agreement was nonetheless enforceable under §301 because the contract "maintained industrial peace and controlled the terms and conditions of the employer's relationship with its employees." <u>Hotel and Restaurant Employees v. J.P. Morgan Hotel</u>, 996 F.2d 561, 566 (2d Cir. 1993).  <u>See also</u> <u>Elite Limousine Plus, Inc. v. District 15</u>, 2006 U.S. Dist. LEXIS 59506 (S.D. N.Y. 2006) ("federal jurisdiction is proper even where a contract is not a traditional collective bargaining agreement").

The June 8 Agreement governs terms of employment applicable to the Kingsbridge employees – the obligation of Kingsbridge to make fringe benefit contributions and thus provide medical and other benefits to the Kingsbridge employees. Further, maintenance of these benefits is critical to maintaining labor peace – indeed, as this Court noted in its August 14, 2008 <u>Mattina</u> decision, the current Kingsbridge strike was motivated in large part by Kingsbridge's failure to make the contributions and the subsequent cutoff of medical benefits. In short, the June 8 Agreement is enforceable under §301.

### 4. Remedy

### A. Unpaid Contributions

It is undisputed that Kingsbridge made no Funds contributions for July, 2007 through and including February 20, 2008.[6] For the months of July 2007 through and including October, 2007, Kingsbridge produced reports reflecting the following principal amounts due:  July, 2007 $123,752.53; August, 2007 $150,210.08; September, 2007 $117,631.89; October, 2007 $156,000.58.  Kolko Affidavit, ¶3, Exhibit 3.  For the months of November, 2007 through and including February, 2008, Kingsbridge provided the Funds with no reports and produced no employer reports in discovery.  Wells Affidavit, ¶14; Kolko Affidavit, ¶4.  Thus, for those months, plaintiffs seek payment based on the Funds' estimates[7] of what is due.[8]

---

[6] The strike started at 6:00 a.m. on February 20, 2008.  Plaintiffs do not seek contributions for any time after the start of the strike.

[7] The estimation method is described in ¶14 of the Wells Affidavit.

[8] If, as a result of an audit, the Funds determine that Kingsbridge overpaid for those – or any other – months, the Funds would provide Kingsbridge with a credit, as per the Funds' normal procedures.  Wells Affidavit, ¶18.

B.  <u>Interest, Attorneys Fees And Costs, And Liquidated Damages</u>

ERISA §1132(g)(2) provides that "in any action . . . by a fiduciary . . . to enforce Section 1145 . . . in which a judgment in favor of the plan is awarded, the Court shall award the plan - . . . (B) interest on the unpaid contributions; (C) an amount equal to the greater of (i) interest in the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the Court under subparagraph (A), (D) reasonable attorney's fees and costs . . . . " Using the Funds 12% interest rate, the interest on the unpaid contributions is $265,559.72, Wells Affidavit, ¶12, Exhibit A, so, pursuant to 29 U.S.C. §1132(g)(2)(B), defendant must pay this amount.  Each of the Funds provides that in any action to collect unpaid contributions in which the Funds prevail, the Funds shall receive an amount equal to the interest on the unpaid contributions or 20% of the unpaid contributions.  Wells Affidavit, ¶16.  Thus, pursuant to ERISA §1132(g)(2)(C), the Funds are entitled to $436,668.70, 20% of the principal amount due.   Finally, pursuant to §1132(g)(2)(D), the Funds are entitled to reasonable attorney's fees and costs.   If plaintiffs receive a favorable decision, they will provide this Court with appropriate documentation of the fees and costs incurred in connection with this litigation.

C.  <u>The Audit</u>

Despite the Funds January 3, 2008 letter attempting to schedule an audit of Kingsbridge, such an audit never took place.  It is also undisputed that Kingsbridge failed to produce any employer reports for November, 2007 through and including February, 2008.

11

"An audit requirement [is] not only 'entirely reasonable in light of ERISA's policies,' . . . but also 'highly relevant to legitimate trustee concerns' in view of 'duties of plan trustees under ERISA' and of 'the common law of trusts upon which ERISA's [trustee] duties are based.'" NYS Teamsters Conference Pension and Ret Fund v. Boening Bros. Inc., 93 F.3d 127, 131 (2d Cir. 1996).    "'Fund trustees have a fundamental duty to locate and take control of Fund property – a duty for which the right to audit is crucial.'"    Id. at 132.  Even where a trust agreement does not specifically reference a fund's power to conduct audits, "an employer audit may be conducted by ERISA trustees so long as the audit is 'necessary or appropriate to carry out the purpose of the trust and [is] not forbidden by the terms of trust'".  Id. at 133.  Here, the Funds' Agreements and Declarations of Trust give the trustees to power to conduct an audit of each participating employer's payroll books and records when deemed necessary or advisable by the trustees.  Wells Affidavit, ¶17.

In light of Kingsbridge's failure to permit the Funds to conduct an audit, the demonstrated need for an audit, the fact that the Funds' Declaration Of Trusts give the trustees the power to conduct an audit, and the caselaw recognizing the importance of an audit in upholding ERISA's policies, the Funds should be permitted to audit Kingsbridge for the period January 1, 2004 through the present.

CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment should be granted, and Kingsbridge should be ordered to take the following action:

- pay all unpaid Funds contributions;

12

- pay interest on the unpaid Funds contributions and the late Funds contributions;

- pay 20% of the principal owed;

- pay reasonable attorney's fees and costs; and

- permit the Funds to conduct an audit as soon as possible.

Respectfully submitted

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____

Hanan B. Kolko (HK 1307)
1350 Broadway, Suite 501
New York, New York 10018-0822
(212) 239-4999
hkolko@msek.com
*Attorneys for Plaintiffs*

Dated:  New York, New York
         August 15, 2008

13