```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
TRUSTEES OF THE 1199/SEIU GREATER NEW      :
YORK BENEFIT FUND, TRUSTEES OF THE         :
1199/SEIU GREATER NEW YORK PENSION         :
FUND, TRUSTEES OF THE 1199/SEIU GREATER    :   07 Civ. 9744 (DLC)
NEW YORK EDUCATION FUND, TRUSTEES OF       :
THE 1199/SEIU GREATER NEW YORK CHILD       :   OPINION & ORDER
CARE FUND, TRUSTEES OF THE 1199/SEIU       :
GREATER NEW YORK JOB SECURITY FUND, and    :
THE TRUSTEES OF THE 1199/SEIU GREATER      :
NEW YORK WORKER PARTICIPATION FUND,        :
                                           :
                        Plaintiffs,        :
                                           :
            -v-                            :
                                           :
KINGSBRIDGE HEIGHTS REHABILITATION CARE    :
CENTER,                                    :
                                           :
                        Defendant.         :
------------------------------------------X
```

Appearances:

For Plaintiffs:
Hanan B. Kolko
Meyer, Suozzi, English & Klein, P.C.
1350 Broadway, Suite 501
New York, NY 10018

For Defendant:
Steven Johnson
Joshua M. Sivin
Kennedy Johnson Gallagher LLC
99 Wall Street – 15th Floor
New York, NY 10005


DENISE COTE, District Judge:

Plaintiffs brought this action alleging that defendant failed to make required contributions to certain benefit funds.[1] On August 15, 2008, plaintiffs filed a motion for summary judgment. That motion was fully submitted on December 5, 2008. For the reasons that follow, the motion is granted.

BACKGROUND

Plaintiffs are the trustees of the 1199/SEIU Greater New York Benefit Fund ("Benefit Fund"), the 1199/SEIU Greater New York Pension Fund, the 1199/SEIU Greater New York Education Fund, the 1199/SEIU Greater New York Child Care Fund, the 1199/SEIU Greater New York Job Security Fund, and the 1199/SEIU Greater New York Worker Participation Fund (collectively the "Funds"). The Funds are established pursuant to § 302(c)(5) of the Labor-Management Relations Act ("LMRA"), and are employee benefit funds under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(3). The Funds provide medical, retirement, child care, education, and other benefits to participants in the Funds and their beneficiaries.

---

[1] The facts regarding defendant's failure to make such contributions, along with other unfair labor practices charges involving defendant, are also set forth in this Court's Opinion in Mattina ex rel. NLRB v. Kingsbridge Heights Rehabilitation and Care Center, No. 08 Civ. 6550, 2008 WL 3833949 (S.D.N.Y. Aug. 14, 2008).

2

Defendant Kingsbridge Heights Rehabilitation Care Center ("Kingsbridge") is a nursing home.  Until April 2005, Kingsbridge and 1199/SEIU United Health Care Workers, East ("1199") were parties to a collective bargaining agreement ("CBA") that set forth terms and conditions of employment for certain Kingsbridge employees.  On June 8, 2006, Kingsbridge, 1199, and the National Labor Relations Board ("NLRB") entered into an agreement (the "Agreement").  The Agreement required Kingsbridge to, inter alia, "make timely monthly contributions to the benefit, pension, education, job security, worker participation and child care funds as they become due."  These contributions are calculated using a percentage of wages, and they were due on the tenth day of the following month.

Kingsbridge made the following payments pursuant to the Agreement.  It paid the contributions that were due on July 10, 2006 with checks dated October 9, 2006; the August 10, 2006 contributions with checks dated October 31, 2006; the September 10, 2006 contributions with checks dated November 13, 2006; the October 10, 2006 contributions with checks dated November 20, 2006; and the November 10, 2006 contributions with checks dated November 27, 2006.  Kingsbridge paid the December 10, 2006 contributions for the Benefit Fund only with checks dated December 16, 2006, but did not make contributions to any of the other Funds until August 13, 2008.  Kingsbridge also did not

3

make any of the January 10, 2007 contributions until August 13, 2008.  Kingsbridge paid the February 10, 2007 contributions with checks dated February 9, 2007 that were received by the Funds on March 30, 2007 and April 4, 2007; the March 10, 2007 contributions with checks dated April 10, 2007 that were received by the Funds on May 3, 2007; the April 10, 2007 contributions with checks dated April 10, 2007 that were received by the Funds on June 27, 2007; the May 10, 2007 contributions with checks dated May 10, 2007 that were received by the Funds on July 27, 2007; the June 10, 2007 contributions with checks dated June 10, 2007 that were received by the Funds on August 8, 2007; and it made contributions for the wages earned in June 2007 on or about July 14, 2008.

At the time the Funds' moving brief for the instant motion was filed, in August 2008, it contended that Kingsbridge had made no contributions for wages earned from July 2007 through February 2008 that were due under the Agreement.  On November 21, 2008, Kingsbridge paid $381,547.23 to the Funds, which it contends satisfies the entire amount that was still due.  Thus, in its opposition, filed in November 2008, Kingsbridge contends that it has now paid all contributions that it considers are due to the Funds.

On November 5, 2007, the Benefit Fund terminated medical benefits for Kingsbridge employees.  From February 20, 2008, to

August 20, 2008, 1199 went on strike against Kingsbridge. If Kingsbridge makes the payments to the Benefit Fund for the wages earned from November 2007 through February 2008, then benefits will be reinstated retroactively to Kingsbridge employees for the time period that benefits were terminated, and they will be able to submit for reimbursement medical bills incurred from November 5, 2007 through February 20, 2008.

Kingsbridge's failure to make timely payments under the Agreement was one of the subjects of an unfair labor practices dispute before the NLRB. On December 24, 2008, the NLRB adopted as modified an Administrative Law Judge's June 30, 2008 Order which found that Kingsbridge had violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act by failing to make timely payments to the Funds since June 2005, and by failing to make any payments for certain months, including no payments since August 2007. Kingsbridge Heights Rehabilitation and Care Center, 353 N.L.R.B. No. 69, 2008 WL 5382911, at *1 (Dec. 24, 2008). The NLRB's order required Kingsbridge to "[p]ay into the Union's Funds those contributions that it failed to make on behalf of its unit employees . . . and continue to make the required timely contributions until such time as it bargains with the Union in good faith to an agreement or the parties reach an impasse." Id.

The Funds sought to audit Kingsbridge on February 7, 2008, but the scheduled audit did not occur. The Funds' Declarations of Trust ("Declarations") give the Funds the power to conduct payroll audits of participating employers when the Trustees deem an audit necessary or advisable. Such payroll audits are conducted periodically by the Funds, and if the audit shows that Kingsbridge overpaid in contributions, the Funds will credit Kingsbridge with the amount of overpayment. Before February 7, 2008, the most recent audit covered the period up through January 1, 2004. Kingsbridge, in its opposition to the instant motion, agreed to allow an audit "subject to appropriate safeguards . . . to protect confidential information of Kingsbridge's non-Union employees." As such, following a January 23, 2009 telephone conference, at which time the parties addressed those concerns, the Court ordered an audit to proceed on January 27, 2009. Following further court proceedings, the audit began on January 29, 2009.

The Declarations also provide that employers are to pay 12% interest on delinquent Funds contributions. Additionally, the Declarations state that in any successful action to collect delinquent contributions, in addition to the principal and interest on the delinquent contributions, the Funds are entitled to receive an amount equal to the greater of the interest or 20% of the unpaid contributions.

6

Upon this motion being fully submitted, the following issues are still in dispute: 1) Kingsbridge alleges that the Funds' calculations of the amount due to the Pension Fund pursuant to the Agreement contain errors based on the payroll figures; 2) Kingsbridge contends that it was not required to make contributions to the Benefit Fund (and the Education Fund, Child Care Fund, Job Security Fund, and Workers Participation Fund) for the period from November 5, 2007 to February 20, 2008, when the Funds had terminated benefits; 3) Kingsbridge contends that the Funds are using the wrong rates to calculate contributions for the Benefit and Child Care funds, 4) Kingsbridge seeks leave to amend its answer to assert an offset defense based on its alleged overpayment of union dues, and 5) Kingsbridge disputes that the Funds are entitled to attorney's fees and liquidated damages in relation to the instant action.

DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the

non-moving party.  <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); <u>accord</u> <u>Sista</u>, 445 F.3d at 169.  That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Only disputes over material facts -- facts that might affect the outcome of the suit under the governing law -- will properly preclude the entry of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A.  <u>Alleged Erroneous Calculations in the Amounts Due</u>

   Kingsbridge asserts that the Funds made certain erroneous calculations pertaining to the payroll records, which resulted in Kingsbridge overpaying on its contributions to the Pension Fund.  As discussed above, the audit of payroll records for the period from January 1, 2004 to the present (not including the time from February 20, 2008 to August 20, 2008) began on January 29, 2009.  If the audit shows that Kingsbridge overpaid in its

8

contributions, Kingsbridge will be entitled to a credit in the amount of any overpayment.

B.  Payments for the Period When Benefits Had Been Terminated

Kingsbridge contends that it should not be required to pay the contributions that it failed to pay for the period from November 5, 2007 through February 20, 2008, because the Funds terminated benefits for that time period.  Kingsbridge argues that principles of contract law dictate that the Funds can only recover the amount of damages actually suffered by the Funds from Kingsbridge's breach, and that because the Funds did not pay any benefits for this period, there are no damages to the Funds caused by Kingsbridge's failure to make its required payments.

This Court has already commented on the merits of Kingbridge's argument in Mattina ex rel. NLRB v. Kingsbridge Heights Rehabilitation and Care Center, 2008 WL 3833949, at *20, and it found that the "proposition that a decision by an employee benefit fund to terminate coverage as a result of an employer's failure to make timely contributions relieves that employer of any further obligation to make such contributions" was "facially absurd."  Kingsbridge's argument does not improve upon repetition.  As discussed above, once Kingsbridge makes the payments that it was required by the Agreement to make for that

9

period, the Funds will reinstate benefits for that time, and employees will be able to submit for reimbursement medical bills incurred during that time.  Kingsbridge cannot be relieved of its obligation to make contributions for those months simply because it breached the Agreement by not making the required payments and the Funds ceased providing benefits.

C.   Rates To Be Used in Calculating Benefit Fund and Child Care Fund Payments

Kingsbridge argues that the rates the plaintiffs are using to calculate the payments due for the Benefit Fund and Child Care Fund are incorrect.  Kingsbridge argues that the proper rates to be used are those found in the expired CBA, which are 17.83% and .40% respectively, because where there is an expired CBA the parties have a legal obligation to maintain the status quo on such matters until a new agreement is reached, and that plaintiffs are improperly seeking to use higher rates derived from recent CBAs entered into with other employers.

As for the Child Care Fund rate, however, plaintiffs point out that the expired CBA states that the rate shall be .40% of gross payroll effective September 1, 2002, but that effective September 1, 2003, it shall be raised to .50%.  Thus, accepting Kingsbridge's argument that the correct rate is that found in the expired CBA, the correct rate is .50%, and plaintiffs are

entitled to the difference between the rate Kingsbridge paid (.40 %) and the .50% rate specified in the expired CBA.

As for the Benefit Fund rate, the expired CBA provides as follows:

> Through September 30, 2002 Employers shall continue to contribute to the 1199/SEIU Greater New York Benefit Fund at the rate of 17.83% of gross payroll. Thereafter, the contribution rate will be adjusted by the Trustees as necessary to maintain the level of benefits currently provided . . . and to provide for a two (2) month reserve.
> In the event the Trustees determine, upon the advice of the Fund's actuary, that additional contributions are required to maintain the current level of benefits and provide for a two (2) month reserve, the percentage rate of contribution to the Fund shall be increased as the Trustees determine to be necessary.

(Emphasis supplied).  On November 23, 2005, the Executive Director of the Funds sent Kingsbridge a letter informing Kingsbridge that, pursuant to the above provision of the expired CBA, the Funds had increased the rate for the Benefit Fund as follows: effective July 1, 2005, the rate was raised to 19.75%; effective January 1, 2006, the rate was raised to 20.25%; effective January 1, 2007, the rate was raised to 20.75%; and effective January 1, 2008, the rate was raised to 21.0%.

Again, accepting Kingsbridge's argument that the correct rate is that provided for in the expired CBA, there is no genuine issue of material fact as to the fact that the expired CBA provided for the rate increases discussed above.  There is

11

therefore no merit to Kingsbridge's contention that the expired CBA dictates that Kingsbridge is required to pay only the rate of 17.83% (which was the specified rate only through September 30, 2002), and plaintiffs are owed the difference between the rate Kingsbridge paid and the appropriate rates as provided for in the November 23, 2005 letter.

D.   Kingsbridge's Motion to Amend Its Answer to Assert an Offset

Rule 15 instructs that leave to amend pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A "motion to amend should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987).  A court should not deny the right to amend on grounds of mere delay absent a showing of bad faith or undue prejudice.  Id.

In opposition to the plaintiffs' motion for summary judgment in this action, Kingsbridge asserts that it should be granted leave to amend its answer to assert a defense of "offset" for certain union dues that Kingsbridge allegedly overpaid to 1199.  Whether or not Kingsbridge overpaid dues to 1199 is irrelevant to the issues in the instant action.  This action concerns payments Kingsbridge was required to make to the

12

Funds as third party beneficiaries of the Agreement between Kingsbridge and 1199.  See Benson v. Brower's Moving and Storage, Inc., 907 F.2d 310, 313 (2d Cir. 1990).  The Agreement required Kingsbridge to pay certain amounts into the Funds, and there is no basis for concluding that the payments provided for in the Agreement should somehow be reduced by virtue of the fact that Kingsbridge may or may not have overpaid on its obligations not to the plaintiff Funds, but to 1199.  See Restatement (Second) of Contracts § 309 cmt. c ("claims and defenses of the promisor against the promisee arising out of separate transactions do not affect the right of the beneficiary"); cf. Lewis v. Benedict Coal Corp., 361 U.S. 459, 470-71 (1960) (rejecting employer's claimed defense against trustees of welfare fund to offset alleged damages from union's breaches where CBA did not provide for such a defense by its terms).  Thus, while Kingsbridge may or may not have a valid independent claim against 1199 for overpayment of union dues, such a claim cannot be asserted as an offset against the Funds in this action for unpaid contributions under the Agreement.  Because Kingsbridge's proposed amendment to add an offset defense would be futile, Kingsbridge's motion to amend its answer is denied.

E.  <u>Liquidated Damages and Attorney's Fees</u>

ERISA provides that, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  In addition, it states:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . . .

29 U.S.C. § 1132(g)(2).

The Trustees argue that they are entitled to, <u>inter alia</u>, liquidated damages and attorney's fees under this provision in connection with the instant action for unpaid contributions. Kingsbridge's only argument in opposition is that it has now

14

paid all of its outstanding contributions, such that the Trustees are not entitled to summary judgment, and therefore that liquidated damages and attorney's fees are not appropriate.

Kingsbridge's argument is without merit. For one, Kingsbridge did not pay the full amount of contributions it owed, due to its positions on the issues discussed above, including payments for the period from November 5, 2007 through February 20, 2008, and the rates for the Benefit and Child Care Funds. More significantly, Kingsbridge is wrong to suggest that it can avoid the penalties under § 1132(g)(2) by paying the Funds at anytime before a judgment is entered.

In Iron Workers District Council of Western New York v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995), the Second Circuit expressly rejected Kingsbridge's argument. The court found that "the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency." Id. at 1507 (emphasis supplied). The court explained that "[p]ermitting delinquent employers to avoid paying § 1132 penalties after suit is filed . . . would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers." Id. at 1508;

15

see also <u>Trustees of Building Service 32B-J Health Fund v. Triangle Services, Inc.</u>, No. 05 Civ. 2546, 2006 WL 3408572, at *2 (S.D.N.Y. Nov. 22, 2006) ("Plaintiffs are entitled to the array of relief listed in Section 1132(g)(2) even though defendant has now paid the late contributions in full and even though defendant paid the contributions before plaintiffs could obtain a judgment stating that the contributions were past due.").

This action was filed on November 2, 2007. Kingsbridge reports that it made at least two payments to plaintiffs for unpaid contributions subsequent to the filing of the lawsuit; a payment of $243,993.01 on or about August 30, 2008 and a payment of $381,547.23 on November 21, 2008. Even if these payments were in full satisfaction of the unpaid amounts (which as discussed above they were not), they were made subsequent to the filing of this action. Kingsbridge is therefore liable for interest and liquidated damages on those amounts, and plaintiffs are entitled to attorney's fees pursuant to § 1132(g)(2).

CONCLUSION

Plaintiffs' August 15, 2008 motion for summary judgment is granted. Defendant's November 21, 2008 motion to amend is denied.

Plaintiffs shall submit a proposed judgment setting forth what they are owed by Kingsbridge, including a) the unpaid contributions for the period of November 2007 through February 2008, b) the difference between the rates Kingsbridge used to calculate payments to the Benefit Fund and Child Care Fund and the correct rates, c) the interest and liquidated damages for all unpaid contributions that were unpaid as of the filing of this action, and d) any amounts still owed by Kingsbridge or any credits due to Kingsbridge based on the payroll records from the recent audit.

As for the request for attorney's fees, it is granted. Plaintiffs shall submit their demand for fees along with documentation supporting the reasonableness of that demand by April 3, 2009. Any objections to that demand are due April 10, 2009. The parties shall attempt to resolve any dispute regarding the reasonableness of the demand during the week of April 13. The plaintiffs' final submission in support of an award of attorney's fees is due April 24, 2009.

SO ORDERED:

Dated:   New York, New York
         March 13, 2009

                                      _____
                                           DENISE COTE
                                      United States District Judge