UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                     :
TRUSTEES OF THE 1199/SEIU GREATER NEW   :
YORK BENEFIT FUND, et al.,              :
            Petitioners-Plaintiffs,      :     07 Civ. 9744 (DLC)
                                       :
           -v-                          :     <u>OPINION AND ORDER</u>
                                       :
HELEN SIEGER,                           :
                    Respondent.       :
                                       :
KINGSBRIDGE HEIGHTS REHABILITATION CARE :
CENTER,                                 :
                    Defendant.        :
                                       :
----------------------------------------X

Appearances:

For the petitioners-plaintiffs:
Hanan B. Kolko
Meyer, Suozzi, English, & Klein, P.C.
1350 Broadway, Suite 501
New York, NY 10018

For the respondent:
Steven Johnson
Joshua M. Sivin
Kennedy Johnson Gallagher, LLC
99 Wall Street, 15th Floor
New York, NY 10005

DENISE COTE, District Judge:

     Petitioners filed this special proceeding pursuant to New

York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Article 4,

N.Y. C.P.L.R. § 5227, and Federal Rule of Civil Procedure

("F.R.C.P.") 69(a)(1) to compel respondent,[1] Helen Sieger

---

[1] Pursuant to N.Y. C.P.L.R. § 401, any adverse party in a special
proceeding is referred to as "the respondent."

("Sieger" or "Respondent"), to pay a judgment they obtained from this Court against the defendant Kingsbridge Heights Rehabilitation Center ("Kingsbridge").[2]  Sieger has filed a motion to dismiss the petition.  For the following reasons, Sieger's motion is denied.

BACKGROUND

1. The Petitioners' Judgment Against Kingsbridge

    The petitioners are the trustees of the 1199/SEIU Greater New York Benefit Fund, the 1199/SEIU Greater New York Pension Fund, the 1199/SEIU Education Fund, the 1199/SEIU Greater New York Child Care Fund, the 1199/SEIU Greater New York Job Security Fund, and the 1199/SEIU Greater New York Worker Participation Fund (collectively the "Funds" or the "petitioners").  The Funds are established pursuant to § 302(c)(5) of the Labor-Management Relations Act, and are employee benefit funds under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1002(2)(3).  The Funds provide

---

[2] The facts regarding the conduct that gave rise to the judgment against Kingsbridge are recounted in Trustees of the 1199/SEIU Greater New York Benefit Fund v. Kingsbridge Heights Rehabilitation Care Center, No. 07 Civ. 9744 (DLC), 2009 WL 650278 (S.D.N.Y. March 13, 2009).

medical, retirement, child care, education, and other benefits to participants in the Funds and their beneficiaries.

Defendant in the underlying action, Kingsbridge, is a nursing home.  On two occasions, Kingsbridge agreed to make contributions to the Funds on behalf of its employees.  First, on October 1, 2002, Kingsbridge committed to contribute to the Funds in a collective bargaining agreement (the "CBA") with 1199/SEIU, United Healthcare Workers East, a labor union that represents certain Kingsbridge employees.  The CBA expired on April 30, 2005.  Second, on June 8, 2006, Kingsbridge agreed to contribute to the Funds as part of a settlement with the National Labor Relations Board that extinguished a complaint against Kingsbridge for unfair labor practices.[3]

Kingsbridge's failure to make these payments has been the subject of extensive proceedings before this Court.  On March 13, 2009, the petitioners' motion for summary judgment was granted and Kingsbridge was found liable for past-due contributions to the Funds, interest and liquidated damages for those unpaid contributions, and attorney's fees.  Six months

---

[3] <u>Mattina ex rel. N.L.R.B. v. Kingsbridge Heights Rehabilitation and Care Ctr.</u>, No. 08 Civ. 6550 (DLC), 2008 WL 3833949, at *5 (S.D.N.Y. Aug. 14, 2008).

later, on September 9, 2009, judgment was entered against

Kingsbridge for $2,733,362.11 (the "September 2009 Judgment").[4]


2.  Petitioners' Efforts to Determine the Existence of a Debt
    that Sieger Owes Kingsbridge

     Sieger is the sole shareholder of Kingsbridge and the

recipient of a $9 million loan from Kingsbridge that is now due.

While Sieger was not a party to the above-described lawsuit, she

is the Respondent in the special proceeding currently pending

before this Court.  The petitioners initiated this special

proceeding to enforce the September 2009 Judgment against

Sieger, as a debtor of Kingsbridge.

     Beginning on November 3, 2009, petitioners sought to depose

Sieger regarding Kingsbridge's 2005, 2006, 2007, and 2008

financial statements, each of which show a "loan receivable --

related party" for $9 million.  The notes accompanying these

statements describe the loan as an advance "to a shareholder."[5]

---

[4] The amount of the judgment includes all unpaid contributions
for the period between November 2007 and February 2008, the
difference between the rates Kingsbridge used to calculate
payments to the Benefit Fund and the Child Care Fund and the
correct rates, the interest and liquidated damages for all
unpaid contributions that were unpaid as of the filing of the
action, any amounts still owed by Kingsbridge or any credits due
to Kingsbridge based on the payroll records, and attorney's
fees.

[5] The 2005 financial statement shows the loan as due in 2006,
while the 2006 and 2007 financial statements list the loan as

Petitioners allege that, as the sole shareholder of Kingsbridge, Sieger was the recipient of the loan.

Between December 2009 and early April 2010, the Funds attempted to depose Sieger regarding the existence of the loan as well as the location and extent of her assets.  The first deposition was scheduled for December 17, 2009, but was postponed after Sieger's counsel advised petitioners that Sieger would be unable to attend the deposition due to a Jewish holiday.  The deposition was then rescheduled for January 14, 2010.  On January 13, however, Sieger's counsel notified the Funds that Sieger could not be deposed the next day due to a health-related issue.  Sieger's counsel included a November 2009 letter from a doctor who had examined Sieger in September 2009. The deposition was rescheduled, this time, for March 3.  On February 26, petitioners received another e-mail from Sieger's counsel canceling the deposition, again due to Sieger's health.[6]

---

due in 2008.  The 2008 financial statement states that Kingsbridge has demanded repayment of the loan.

[6] Sieger has also refused to participate in two cases pending before New York state courts.  In People v. Sieger, Index No. 2895/2009 (N.Y. Sup. Ct. Bronx County), Sieger failed to appear before the Supreme Court of the State of New York for her surrender and arraignment on charges of Grand Larceny in the First Degree and Medical Assistance Provider Prohibited Practice.  She also violated court orders concerning fingerprinting.  On January 29, 2010, the Supreme Court issued a warrant for Sieger's arrest.  Similarly, in Sieger v. Sieger, Index No. 6975/98 (N.Y. Sup. Ct. Bronx County), a divorce proceeding against the Respondent, Sieger has continuously moved

On March 10, petitioners requested that this Court enter an Order compelling Sieger to attend a deposition later that month or be precluded from contesting the existence of a $9 million loan that is due immediately to Kingsbridge.  A March 11 Order required Sieger to attend a deposition before the Honorable Theodore H. Katz, United States Magistrate Judge, on March 18. If Sieger failed to attend that deposition, the March 11 Order further provided that Sieger had to appear before this Court on March 26 to show cause why the Court should not grant the petitioners' requested relief.  In order to accommodate Sieger, this Court adjourned the deposition on two occasions:  A March 15 Order moved the deposition to March 29; a March 24 Order (the "March 24 Order") rescheduled the deposition to April 15.  The court appearance was ultimately rescheduled to April 23.

Sieger failed to attend her April 15 deposition and did not appear before this Court on April 23 to respond to the petitioners' request for relief.  After confirming that Sieger had notice of the date on which she was supposed to be deposed under the March 24 Order, this Court held that Sieger cannot dispute the existence of a $9 million loan made to her by Kingsbridge or that the loan is now due in its entirety.

---

to adjourn the trial based on a host of legal and health-related arguments.

3.  Procedural History of this Motion

On April 29, 2010, petitioners filed a motion (the "April 29 Motion") pursuant to N.Y. C.P.L.R. § 5227 to compel respondent to pay them the amount of the September 2009 judgment -- approximately $2.7 million -- and post-judgment interest.  On May 14, Respondent opposed petitioners' motion on the grounds that petitioners proceeded by motion rather than by commencing a special proceeding and that petitioners failed to serve Sieger in the manner specified by N.Y. C.P.L.R. § 403(c).  The April 29 Motion became fully submitted on May 28, when petitioners responded to the motion and moved as well for leave to serve Sieger pursuant to N.Y. C.P.L.R. § 308(5) (the "May 28 Motion").  On June 11, the May 28 Motion became fully submitted.

The April 29 Motion and the May 28 Motion were disposed of by an Order issued on June 14, 2010 (the "June 14 Order").  First, the June 14 Order stated that any effort by petitioners to collect the September 2009 judgment from Sieger must take the form of a special proceeding.  Such proceedings must be initiated by serving a petition, with notice of petition, as set forth in N.Y. C.P.L.R. § 5227 and Article 4.  Second, pursuant to N.Y. C.P.L.R. § 308(5), the June 14 Order granted petitioners' application to serve Sieger by alternative means.  Citing Sieger's demonstrated reluctance to comply with state and federal court orders, and a prior statement by Sieger's counsel

that he could accept service on his client's behalf, the Court ordered that service on Sieger's attorney would be deemed good and sufficient service under N.Y. C.P.L.R. § 403.

On July 20, petitioners filed a notice of petition and a petition (the "Petition"), thereby complying with the June 14 Order regarding the proper procedure for initiating a special proceeding pursuant to F.R.C.P. 69(a)(1), N.Y. C.P.L.R. § 5227 and Article 4. Respondent was then served under N.Y. C.P.L.R. § 308(5): petitioners delivered the notice of petition and the petition to Sieger's counsel by e-mail and certified mail, return receipt requested -- the alternative method of service authorized by the June 14 Order.

On August 6, Sieger moved to dismiss the petition for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim pursuant to F.R.C.P. 12(b)(1), 12(b)(5), and 12(b)(6). Additionally, Sieger argues that the N.Y. C.P.L.R. and the F.R.C.P. require petitioners to commence a new action against Sieger and do not permit the petition to be filed as a supplementary proceeding attached to the Funds' case against Kingsbridge. On August 27, 2010, the motion became fully submitted.

DISCUSSION

1.  Subject Matter Jurisdiction

Respondent has moved to dismiss the petition for lack of subject matter jurisdiction, pursuant to F.R.C.P. 12(b)(1). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  Federal courts are courts of limited jurisdiction and a plaintiff wishing to file a lawsuit in federal court must assert a specific grant of subject matter jurisdiction authorizing the court to hear the case.  See Frontera Resources Azerbaijan Corp. v. State Oil Co., 582 F.3d 393, 397 (2d Cir. 2009).[7]

The Supreme Court's decision Peacock v. Thomas, 516 U.S. 349 (1996), describes the breadth of a "federal court's inherent power to enforce its judgments" through the exercise of ancillary jurisdiction over third parties.  Id. at 356.  The Court observed that district courts have jurisdiction over a

_____

[7] No party suggests that the petition raises a federal question giving rise to jurisdiction under 28 U.S.C. § 1331 or that there is diversity of citizenship between the parties to support jurisdiction under 28 U.S.C. § 1332.

"broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments -- including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." Id. at 356. Without such authority, the Court reasoned that "the judicial power would be incomplete and entirely inadequate for the purposes for which it was conferred by the Constitution." Id. At the same time, the Court defined the outer limits of the federal courts' expansive enforcement power, holding that district courts lack ancillary jurisdiction over actions that seek "to impose liability for a money judgment on a person not otherwise liable for the judgment." Id. at 351.

In Epperson v. Entertainment Express, Inc., 242 F.3d 100 (2d Cir. 2001), the Second Circuit applied the Peacock holding to claims for fraudulent conveyance, deciding that these claims fall within a district court's ancillary jurisdiction because they are actions to enforce existing judgments and do not impose new liability on third parties. Id. at 107. Significantly, the Second Circuit found that Peacock left intact Second Circuit precedent creating a "distinction for jurisdictional purposes . . . between an action to collect a judgment . . . and an action to establish liability on the part of a third party." Id. at 104. In an action to collect an existing judgment, a federal court's ancillary jurisdiction extends to a judgment creditor's

10

claim against "the assets of the judgment debtor[,] even though the assets are found in the hands of a third party."  Id.

The claim against Sieger falls squarely within the bounds of a federal court's ancillary jurisdiction to enforce its judgments.  The petitioners seek to collect the September 2009 Judgment against Kingsbridge by tracing Kingsbridge's assets into the hands of a related third party, Sieger.  The petition does not impose "new" liability on Sieger.  Instead, it is simply an effort by petitioners to recover the September 2009 Judgment by collecting an outstanding debt that Sieger owes the judgment debtor.  As a result of her failure to comply with the March 24 Order, Sieger is barred from contesting the existence of the loan or that it is presently due.  Thus, in many respects, this action is analogous to a standard garnishment proceeding in which the ownership of an asset is not in dispute and the proceeding serves merely as a procedural device for the enforcement of a judgment.  Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 834 n.10 (1988) (noting that the "usual understanding of garnishment" is that it is just a procedure for the enforcement of a judgment and does not create a "rule of decision" for establishing liability); see also Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A., 190 F.3d 16, 21 (2d Cir. 1998) (describing the third-party "judgment debtor's debtor" from whom a judgment creditor seeks

11

to collect under N.Y. C.P.L.R. § 5227 as a "garnishee").  In
Peacock, the Supreme Court expressly referred to garnishment
proceedings as actions that do not impose new liability on a
third party and that are therefore within a district court's
ancillary jurisdiction to enforce judgments.  Peacock, 516 U.S.
at 356.[8]

Sieger argues that even if there is federal court
jurisdiction over a third party who indisputably holds an asset
belonging to Kingsbridge, jurisdiction is absent here since she
contests the  existence of the asset.  In short, she contends
that jurisdiction is lacking because a federal court does not
have the authority to determine either the existence of a loan

_____

[8] Sieger correctly states the Epperson test for determining the
scope of a federal courts' ancillary enforcement jurisdiction,
but does not show that the special proceeding initiated by the
petition imposes "new liability" on her.  Sieger places undue
weight on the fact that New York law requires a judgment
creditor to commence a "special proceeding" in order to recover
against a third party who owes a debt to the judgment debtor.
N.Y. C.P.L.R. § 5227.  This argument mistakes procedure for
substance.  The N.Y. C.P.L.R. merely lays out the procedural
rules for enforcing a judgment, while this Court's ancillary
enforcement jurisdiction hinges on a substantive analysis of the
relationships between the judgment creditor, the judgment
debtor, and the third party.  See Alliance Bond Fund, Inc., 190
F.3d at 20 (referring to Article 52 of the N.Y. C.P.L.R. as the
"New York procedure for enforcement of judgments"); David D.
Siegel, General Commentary, N.Y. C.P.L.R. Art. 52 (McKinney
1997) ("Article 52 of the CPLR supplies the governing procedural
law for the enforcement of money judgments."); Fed. R. Civ. P.
69(a)(1) ("The procedure on execution -- and in proceedings
supplementary to and in aid of judgment or execution -- must
accord with the procedure of the state where the court is
located, but a federal statute governs to the extent it
applies.").

from Kingsbridge to Sieger, or that the loan is due.  This argument fails.  In IFC Interconsult, AG v. Safeguard International Partners, LLC, 438 F.3d 298 (3d Cir. 2006), the Third Circuit found that by upholding federal courts' ancillary jurisdiction over garnishment proceedings, the Supreme Court necessarily affirmed a district court's authority to find that a third party is liable to the judgment debtor.  Id. at 312-13. Otherwise, a garnishee could defeat federal jurisdiction merely by contesting garnishment.  Id.; accord Matos v. Nellis, 101 F.3d 1193, 1196 (7th Cir. 1996) (holding that garnishment proceedings require a district court to decide "[w]hether a debt existed, and if so whether [it has been] repaid").

Sieger next argues that ancillary jurisdiction cannot provide a basis for this petition because the facts and legal theory relevant to determining Sieger's liability on a loan to Kingsbridge are unrelated to the facts and law establishing Kingsbridge's obligation to the Funds.  This argument is also unavailing.  Respondent is correct that one of the justifications for ancillary jurisdiction in Peacock is the need "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent." Peacock, 516 U.S. at 354 (citation omitted).  But factual and legal "interdependence" is not the sole basis for a federal court's exercise of ancillary jurisdiction.  Peacock holds that

ancillary jurisdiction over a third-party is also permitted in a second context: "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. (citation omitted).  Jurisdiction over the petition rests on this second basis of ancillary jurisdiction, "ancillary enforcement jurisdiction."  Therefore, the proper inquiry is not whether Sieger's alleged debt to Kingsbridge is factually and legally linked to the Funds' claim against Kingsbridge, but rather whether the petition is a "supplementary proceeding . . . to assist in the protection and enforcement of [a] federal judgment." Id. at 356.  For the reasons detailed above, "ancillary enforcement jurisdiction" provides subject matter jurisdiction over the petition.

Finally, Sieger contends that Epperson limits federal court ancillary enforcement jurisdiction over third parties to those cases in which a judgment creditor seeks to recover against property that has been fraudulently conveyed.  This interpretation of the Second Circuit's holding in Epperson is unduly restrictive.  Epperson cites fraudulent conveyance claims as an example of an enforcement proceeding "to collect a judgment" as opposed to one to "establish liability on the part of a third party." Epperson, 242 F.3d at 104.  Epperson does not suggest that fraudulent conveyance claims are the only kind of enforcement actions that can be brought against a third party

14

without imposing new liability.  Indeed, the Supreme Court's decision in Peacock forecloses such a holding.  There, the Court characterized a variety of enforcement proceedings involving third parties -- not just fraudulent conveyance actions -- as falling within a federal courts' ancillary enforcement jurisdiction.  Peacock, 516 U.S. at 356 (holding that ancillary enforcement jurisdiction extends to actions for "attachment, mandamus, [and] garnishment").

2.  Insufficient Service of Process

Respondent has also moved to dismiss the petition for insufficient service of process, under F.R.C.P. 12(b)(5). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Dynegy Midstream Servs. V. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006).  "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service."  Burda Media, Inc. v. Viertel, 417 F.3d 292, 298-99 (2d Cir. 2005) (citation omitted).

Service of process on an individual within a judicial district of the United States may be completed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).

Since this Court sits in New York, service is adequate if it complies with the N.Y. C.P.L.R. requirements for service of process.  N.Y. C.P.L.R. Article 4 outlines the procedures that govern special proceedings.  Section 403, however, provides that "[a] notice of petition shall be served in the same manner as a summons in an action."  Thus, the controlling provision is § 308, which sets out the valid methods for service upon a natural person in an action.  Section 308(5), in turn, permits service "in such manner as the court, upon motion with notice, directs," if service under more traditional methods is found to be "impracticable."

It is not disputed that petitioners served Sieger in accordance with the terms of this Court's June 14 Order authorizing service via alternative means pursuant to § 308(5).[9] Consequently, service was valid under the N.Y. C.P.L.R. and the F.R.C.P. and Sieger's motion to dismiss the petition for insufficient service of process is denied.[10]

---

[9] Respondent does not contest this Court's finding that service on Sieger by more traditional means was impracticable.

[10] To the extent that Seiger contends that service of process was inadequate because there is no subject matter jurisdiction over the petition, that argument has already been rejected.

3.  Failure to State a Claim

    Sieger also moves to dismiss the petition for failure to state a claim.  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S., 129 S.Ct. 1937, 1949 (2009).  For a plaintiff's claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation omitted)).  A court considering a motion to dismiss pursuant to F.R.C.P 12(b)(6), "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Viet. Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).

    The petition was filed pursuant to F.R.C.P. 69 and N.Y. C.P.L.R. § 5227.  F.R.C.P. 69 provides that, unless there is an applicable federal statute, federal courts must look to the rules of the state where the court sits to determine the procedure for execution of a money judgment and the procedure "in proceedings supplementary to and in aid of judgment or execution."  In New York, § 5227 of the N.Y. C.P.L.R. supplies the procedure for executing a money judgment against a third

17

party who owes a debt to a judgment debtor.  N.Y. C.P.L.R. §
5227.  Specifically, § 5227 authorizes judgment creditors to
commence a "special proceeding" against "any person who it is
shown is or will become indebted to the judgment debtor."  Id.
Upon the completion of the proceeding, a court "may require such
person to pay to the judgment creditor the debt upon maturity,
or so much of it as is sufficient to satisfy the judgment."  Id.
Alternatively, a court may "direct that a judgment be entered
against such person in favor of the judgment creditor."  Id.

     Sieger's motion to dismiss for failure to state a claim is
denied.  The Funds' petition meets the procedural conditions of
§ 5227 and alleges facts sufficient to plausibly conclude that
Sieger owes Kingsbridge a debt against which the petitioners can
execute their judgment.  The petitioners satisfied the
procedural requirements of § 5227 by bringing this action as a
special proceeding against Sieger and by serving her with a
petition, accompanied by a notice of petition.  Additionally,
the petition alleges that Kingsbridge loaned Sieger $9 million,
that this loan is now due, and that Sieger has not repaid the
debt.  In short, petitioners allege facts from which it is
plausible to conclude that Sieger owes Kingsbridge a debt
against which § 5227 permits the petitioners to execute their
September 2009 Judgment.

Sieger argues that petitioners fail to state a claim for relief because F.R.C.P. 69 does not permit a judgment creditor to subject property other than the judgment debtor's property to a judgment. Even if this statement accurately describes the law, it is inapposite to the petition's claim. The Funds allege that Sieger is holding $9 million that is the property of Kingsbridge. And, it is against this property that they seek to execute their $2.7 million judgment. By executing against this debt, petitioners do not seek to recover from Sieger's property but from Kingsbridge's property.[11]

Several of the cases on which Sieger relies to support her motion to dismiss actually confirm that F.R.C.P. 69 and N.Y. C.P.L.R. § 5227 permit a judgment creditor to recover against a

---

[11] Respondent objects to the characterization of debt that a third party owes to a judgment debtor as the property of the judgment debtor. Further, Respondent argues that executing against a debt requires a judgment creditor to subject the property of a third party to a judgment in violation of F.R.C.P. 69(a). To the extent N.Y. C.P.L.R. § 5227 clearly authorizes collection against a debt, Respondent concludes it is not incorporated by the F.R.C.P. for use in federal courts. There is no precedent to support Respondent's distinction between debt and property for the purpose of F.R.C.P. 69(a). There are, however, several instances in which federal courts, including the Second Circuit, have referenced F.R.C.P. 69(a) as permitting federal courts to employ the procedures in N.Y. C.P.L.R. § 5227 to execute judgments. See Koehler v. Bank of Bermuda, Ltd., 544 F.3d 78, 85 (2d Cir. 2008); L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc., 634 F.Supp.2d 290, 316 (E.D.N.Y. 2009); A.F.L. Falck, S.p.A. v. E.A. Karay Co., Inc., No. 85 Civ. 1998 (RWS), 1990 WL 145583, at *5 (S.D.N.Y. Sept.28, 1990).

judgment debtor's debtor.[12]   For example, in <u>Magnaleasing, Inc.</u>
<u>v. Staten Island Mall</u>, 76 F.R.D. 559 (S.D.N.Y. 1977), a district
court granted a judgment creditor's request for an order
compelling disclosure of a settlement agreement that provided
for a transfer of assets from the judgment debtor to a third
party.   <u>Id</u>. at 560-61.   Similarly, Sieger's reliance on <u>Costamar</u>
<u>Shipping Co., Ltd. v. Kim-Sail, Ltd</u>., No. 95 Civ. 3349 (KTD),
1995 WL 736907 (S.D.N.Y. 1995), is misplaced.   <u>Costamar</u> observes
that F.R.C.P. 69(a) permits discovery of a non-party's assets to
"search for the defendant's hidden assets."   <u>Id</u>. at *3.


4.   Failure to Commence a New Action

     Finally, without citation to any authority, Sieger argues
that the petition should be dismissed because in it the Funds
raise a new, independent claim against Sieger and that such a
claim may only be brought in a separate proceeding.   When a §
5227 petition falls within the scope of a court's ancillary

---

[12] Respondent places much weight on <u>Burak v. Scott</u>, 29 F.Supp.
775 (D.D.C. 1939).   In <u>Burak</u>, a judgment creditor sought to
depose eighteen individuals against whom he had not obtained a
judgment, although the deposition notices asserted that the
depositions were being taken in order to assist in "the
discovery of assets in aid of the judgment . . . obtained 'by
Samuel Burak <u>against you</u>.'"   <u>Id</u>. at 776 (emphasis supplied).   In
granting the motion to quash, the district court emphasized that
the judgment creditor had erred by attempting to recover his
judgment from the personal assets of the third parties.   <u>Id</u>.
The court did not consider whether F.R.C.P. 69 permits a
judgment creditor to depose third parties regarding assets of
the judgment debtor that they possess, as is the case here.

enforcement jurisdiction, it is unnecessary to file a separate plenary proceeding.  See, e.g., Cordius Trust v. Kummerfeld, No. 99 Civ. 3200(DLC), 2004 WL 616125, at *8-9 (S.D.N.Y. Mar. 30, 2004).

Sieger attempts to distinguish Cordius by pointing out that in Cordius, the petitioners sought to pierce the corporate veil.  This distinction fails.  The key to the analysis in Cordius was that the petition did not raise an "independent . . . cause of action, but rather [was] a means of imposing liability on an underlying cause of action."  Id. at *9 (citation omitted).  Similarly, as the preceding analysis explains, the instant petition is an effort to collect a preexisting judgment and does not assert an independent theory of liability.  Thus, as in Cordius, the petitioners need not file a separate, plenary action.

CONCLUSION

Sieger's August 6, 2010 motion to dismiss is denied.

SO ORDERED:

Dated:    New York, New York
          October 5, 2010

                                    _____
                                         DENISE COTE
                                    United States District Judge

21